No. 25-1206

# In The United States Court of Appeals for the First Circuit

**MONTEREY BAY AQUARIUM FOUNDATION,**
*Defendant-Appellant,*

v.

**BEAN MAINE LOBSTER, INC.; MAINE LOBSTERMEN'S ASSOCIATION; MAINE COAST FISHERMEN'S ASSOCIATION, INC.; MAINE LOBSTER AND PROCESSING, LLC, d/b/a ATWOOD LOBSTER, LLC; BUG CATCHER, INC.,**
*Plaintiffs-Appellees.*

**DEFENDANT-APPELLANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY BRIEFING DEADLINES OR ISSUANCE OF BRIEFING SCHEDULE, PENDING RESOLUTION OF SECTION 1292(b) PROCEDURAL MATTERS**

RUSSELL B. PIERCE, JR.
NORMAN, HANSON, & DETROY, LLC
  2 Canal Plaza, P.O. Box 4600
  Portland, ME 04112
  (207) 774-7000
  rpierce@nhdlaw.com

LISA S. BLATT
  *Counsel of Record*
JOSEPH M. TERRY
AMY MASON SAHARIA
NICHOLAS G. GAMSE
ALEXANDRA M. GUTIERREZ
CLAIRE R. CAHILL
WILLIAMS & CONNOLLY LLP
  680 Maine Avenue, S.W.
  Washington, DC 20024
  (202) 434-5000
  (202) 434-5029 (fax)
  lblatt@wc.com

A limited stay of briefing will prevent bifurcated briefing of issues arising from the same defamation claim order. As Defendant-Appellant Monterey Bay Aquarium Foundation has established, good cause exists because a stay would guarantee that all potentially appealable issues decided in the district court's February 6, 2025 Order, ECF No. 56, are briefed and decided at the same time.[1] *See Vera-Lozano v. Int'l Broad.*, 50 F.3d 67, 70 (1st Cir. 1995) (observing generally that "joint adjudication serves the interest of judicial economy"). Those issues—both the anti-SLAPP issue already before this Court and the two issues on which the Aquarium has sought interlocutory review pursuant to 28 U.S.C. § 1292(b)—present serious and important questions under defamation law and the First Amendment.

Plaintiffs-Appellees do not dispute that a stay would permit the efficient consolidation of issues should interlocutory appeal be allowed under 28 U.S.C. § 1292(b), or that denial of a stay could inflict needless litigation costs upon the Aquarium. *See* Mot. Stay at 6-8. Appellees

---

[1] All ECF citations refer to the district court's docket in *Bean Maine Lobster, Inc. v. Monterey Bay Aquarium Foundation*, No. 2:23-cv-00129-JAW (D. Me.). "Mot. Stay" and "Opp'n Mot. Stay" refer to the filings in this Court.

nonetheless oppose the Aquarium's motion, arguing that interlocutory appeal of the remaining issues is not guaranteed and that this limited stay would generally inflict unspecified harm upon them with the "beginning of peak lobster season" approaching. Opp'n Mot. Stay at 9.

Those arguments are meritless. This case cries out for interlocutory review. Appellees downplay the significance of the district court's novel creation of an exception to the group-libel bar allowing groups with *thousands* of members to pursue defamation claims, which amici journalism and free speech organizations described in their brief supporting the Aquarium's § 1292(b) motion as "a shift in the law" that would "threaten[] essential reporting." ECF No. 72-1 at 3, 5 (Amici Br.). The decision below is literally unprecedented, and will chill free speech on issues of public importance, including criticism of specific industries. Appellees also ignore that the district court adopted a new approach to scientific opinions, requiring speakers to cite evidence that they have discounted or forgo First Amendment protection.

Appellees' arguments regarding the impact of a stay are also unsupported. Appellees do not and cannot establish prejudice from a stay, in part because discovery proceedings *are already stayed* below

2

pending resolution of the Aquarium's § 1292(b) motion, which is fully briefed and awaiting decision.  Appellees also fail to cite any authority denying a stay where consolidation of issues on appeal is possible.  Indeed, for the reasons described above, it will plainly protect judicial efficiency for the parties to present this Court with consolidated briefing covering all issues on appeal.

The Court should thus stay briefing until after adjudication of the Aquarium's request for interlocutory appeal of the other issues that arise from the same claim and same Order as this appeal.

## ARGUMENT

### I. The Aquarium Has Established Good Cause for a Stay.

#### A. The Aquarium's Motion Is Timely and Serves the Interest of Judicial Economy.

The Aquarium has satisfied the "good cause" standard under Federal Rule of Appellate Procedure 26(d) because it moved promptly for a stay and did so for the recognized interest of judicial economy.  Appellees have not challenged these basic points.

This Court has held in the context of Federal Rule of Civil Procedure 16(b) that the "'good cause' standard emphasizes the diligence" of the moving party as the most important criterion for modification of a schedule.  *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 155 (1st Cir. 2004).  Other courts have recognized that judicial economy is

also sufficient to constitute good cause. *See, e.g.*, *Parkhurst v. Superior Drywall, Inc.*, 2022 WL 36475, at *2 (D. Mass. Jan. 4, 2022) (finding "good cause" under Federal Civil Rule of Procedure 16(b) where motion served "important interest of judicial economy"); *Fed. Ins. Co. v. Fire Sprinkler Tech., Inc.*, 2021 WL 1857403, at *8 (D. Mass. May 10, 2021) (similar).

Here, good cause exists because the Aquarium has diligently moved for a stay, before the entry of any briefing schedule, in order to allow (a) a decision on whether interlocutory review of two important questions of defamation law is warranted under § 1292(b) and (b) consolidation of those questions with this appeal. As the Aquarium explained (at 6), a stay would prevent any possibility of a time-consuming and costly bifurcated appeal, and thus "serve[] the interest of judicial economy," further supporting a finding of good cause. *Vera-Lozano v. Int'l Broad.*, 50 F.3d 67, 70 (1st Cir. 1995).

Appellees do not dispute any of this. They also have cited no cases where a movant timely sought a stay for a recognized judicial efficiency interest, but the stay was nonetheless denied. For these basic reasons alone, the Aquarium's motion for a stay should be granted.

**B.    Interlocutory Appeal Here Is More Than a "Remote Possibility."**

Absent any authority for denying a stay in these circumstances, Appellees (at 5-7) dispute the existence of good cause on the ground that

4

the Aquarium's "questions . . . are a poor fit for interlocutory review," rendering the eventual consolidation of this case, in their view, only a "remote possibility." This argument misunderstands the questions at issue and the free speech interests at stake. The questions in the Aquarium's § 1292(b) motion present a compelling case for interlocutory review.

*First*, Appellees (at 2, 7) assert that the Aquarium's § 1292(b) motion is "unlikely to be granted" because the Aquarium's "questions require the application of law to fact." Appellees are wrong. The Aquarium raises important and controlling questions of pure defamation law that satisfy § 1292(b)'s criteria for interlocutory appeal.

The first question that the Aquarium raises is whether, as a matter of law, there exists an exception to the group libel rule that permits defamation claims based on statements "encompass[ing an] entire . . . industry," Order at 105, 112, comprising thousands of businesses and individuals, ECF No. 64 at 1 (Mot. Certify). As Appellees (at 3) concede, their defamation claim is predicated on statements "falsely depict[ing] the Maine lobster fishery"—as opposed to any specific member of this industry—"as being directly responsible for right whale injuries and mortalities."

The district court's newly created exception to the rule barring group defamation claims is unprecedented and, as amici note, amounts to "a notable departure in an important area of the law, with the

potential to impact speech." Amici Br. at 6. Appellees do not dispute that no other court anywhere ever has allowed a whole group with *thousands* of members to proceed with a defamation claim. *See* ECF No. 73 at 5-6 (Opp'n Certify) (Plaintiffs' opposition to the § 1292(b) motion acknowledging that the district court's group defamation ruling concerning "roughly 5,600 Maine lobstermen" may be "novel and unprecedented"); *see also* Restatement (Second) of Torts § 564A cmt. a (1977) ("As a general rule no action lies for the publication of defamatory words concerning a large group or class of persons.").

Indeed, this Court and courts across the country routinely have rejected claims like this one *as a matter of law*. *See, e.g.*, *Arcand v. Evening Call Publ'g Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977) (explaining that it is a "guiding principle[]" of defamation law that "[d]efamation of a large group gives rise to no civil action on the part of an individual member of the group unless he can show special application of the defamatory matter to himself" and rejecting defamation claim by 400-member group (citation omitted)); *Ayyadurai v. Walsh*, 2021 WL 3374915, at *11 (D. Mass. Aug. 3, 2021) (no defamation claim viable where group included 50 protesters); *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 802 (Fla. Dist. Ct. App. 1997) (same as to "436 commercial net fishermen"); *see also* Mot. Certify at 5-7 (collecting cases). This issue manifestly warrants interlocutory review.

The second question that the Aquarium raises is whether, as a matter of law, statements based on "scientific sources" in the context of a public, scientific debate can "give rise to a defamation claim." Order at 117. This Court expressly has acknowledged but left open this novel legal question. *See Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 534 (1st Cir. 2023) (whether a statement "should be protected as opinion because it forms part of a scientific debate"). And, as this Court has recognized, a growing body of law has held that such statements are "non-actionable opinion" as a matter of law. *Id.* (citing *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497-98 (2d Cir. 2013)); *see also, e.g.*, *Malone v. WP Co.*, 2023 WL 6447311, at *4-5 (W.D. Va. Sept. 29, 2023) (similar); *Arthur v. Offit*, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010) (similar).

Thus, contrary to Appellees' arguments, neither of the Aquarium's questions concerns factual issues. They are instead novel, dispositive legal issues that should be resolved on interlocutory review. A stay would allow this Court and the district court time to consider these questions without risking a split appeal of issues arising from the very same claim decided by the very same Order.

*Second*, in arguing against a stay, Appellees downplay the speech interests at stake, and misunderstand the speech-protective purpose of Maine's anti-SLAPP statute.

Appellees (at 7 n.2) contend that "courts routinely deny interlocutory certification of First Amendment issues at the motion to dismiss stage," and so this Court should not order a stay to allow for resolution of the Aquarium's § 1292(b) motion. But the cases they cite are inapposite. In *Leuthy v. LePage*, the § 1292(b) movant sought to defeat a claim concerning the suppression of speech, such that an interlocutory appeal had the potential to prolong the alleged First Amendment violation, rather than abate it. 2018 WL 4955194, at *1 (D. Me. Oct. 12, 2018). And in *Hermès International v. Rothschild*, the question for appeal was whether a cryptoasset received any First Amendment protection *at all* in the context of a trademark infringement case. 590 F. Supp. 3d 647, 651 (S.D.N.Y. 2022).

Here, it is plain that the Aquarium is seeking to vindicate its core First Amendment rights by appealing issues that would result in the disposal of the defamation claim against it. This Court and others have repeatedly recognized that such issues merit interlocutory review. *See, e.g.*, *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 584 (1st Cir. 1980) (permitting § 1292(b) interlocutory appeal of "important [defamation] question"); *Kahl v. BNA, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.) (emphasizing, upon certification of interlocutory defamation appeal, the constitutional imperative to "expeditiously weed out unmeritorious defamation suits").

Additionally, the importance of the speech interests involved here is underscored by the participation of multiple journalism and free speech organizations, including the Reporters Committee for Freedom of the Press and the New England First Amendment Coalition, in this litigation. As these organizations note in their brief before the district court, the rulings submitted for appeal under § 1292(b) "raise[] significant concerns for the press, and without immediate appellate review, risk[] chilling swaths of reporting and commentary." Amici Br. at 1.

Appellees (at 8) also argue that "consistent with the statutory design," the Aquarium's appeal on the Maine anti-SLAPP issue "should proceed without delay." But as Appellees concede, the "primary objective" of that statute is "to shield *defendants* from the burden of meritless litigation." *Id.* (emphasis added) (citation omitted). A limited stay here would ensure that the parties would have to engage in only a single round of briefing, rather than litigating issues arising from the same claim a second time. A stay thus would guarantee that the parties avoid additional and unnecessary "litigation costs," which advances the purpose of Maine's anti-SLAPP statute and the First Amendment. *Morse Bros. v. Webster*, 772 A.2d 842, 846 (Me. 2001); *see also Kahl*, 856 F.3d at 110, 116 (allowing expeditious review to prevent "long and expensive litigation" that would "thwart[]" "the protective purpose of the First Amendment" (citation omitted)).

9

## II. Appellees Have Not Demonstrated Prejudice.

In this Court, prejudice to the opposing party is "not the dominant criterion" of the "good cause" standard. *O'Connell*, 357 F.3d at 155 (emphasizing that the "dominant criterion" is the movant's diligence); *see also* supra Section I(A). In any event, the prejudice claimed here—the continued publication of the allegedly defamatory statements—should be afforded no weight at all, as it is unfounded and unsupported by any authority.

*First*, Appellees (at 2) assert that a stay would cause a "potentially lengthy and unnecessary delay that would prolong [the] ongoing harm" of the Aquarium's "red rating" of the lobster fishery. But this argument is meritless because the district court already stayed proceedings pending resolution of the Aquarium's § 1292 motion. *See* ECF No. 71 at 4-5 (Scheduling Order). A commensurate stay of briefing in this Court will not further delay this litigation. The § 1292(b) motion is now fully briefed below. Additionally, the district court's stay pending resolution of the § 1292(b) motion, combined with the pendency of this appeal, creates incentives for the district court to rule quickly, making any prolonged delay unlikely.

*Second*, Appellees (at 9) suggest that a stay would cause them special harm because the "summer months are approaching, marking the beginning of peak lobster season," and "[e]very lobster season clouded by the [Aquarium's] 'red' rating . . . multiplies the harms to [their] businesses." But the focus on the "summer months" makes no sense; even if discovery proceeded, it would obviously extend long beyond that time frame, and a stay here would have no meaningful impact on the ultimate duration of this case. In any event, Appellees cite no case in which a party's mounting damages justified denying a stay. If anything, that should matter to the Aquarium, which would have to pay those damages if Appellees ultimately prevail.

*Third*, even if Appellees could establish any minimal prejudice from the entry of a stay, they do not deny that the Aquarium would be substantially prejudiced by the denial of one. As the Supreme Judicial Court of Maine has noted, the very harm of a meritless defamation claim is that it "impos[es] litigation costs" on speakers "for exercising their constitutional right to speak and petition." *Morse Bros.*, 772 A.2d at 846 (citation omitted) (applying Maine anti-SLAPP statute). Here, if a stay is denied, the Aquarium would have to prepare—and the Court would

11

have to review—two rounds of briefs. There is no reason to multiply this litigation, to the Aquarium's and the Court's detriment, when a short stay would avoid this problem.

In sum, Appellees have failed to identify any prejudice that would support the denial of a limited stay, let alone outweigh the potential burden to the Court and the parties of undergoing unnecessary briefing.

## CONCLUSION

For the foregoing reasons, and those in the Aquarium's motion, the Court should order a stay of the briefing deadlines or, alternatively, of the issuance of a briefing schedule until resolution of the § 1292(b) motion to certify order for interlocutory appeal in the district court and a petition for interlocutory review under § 1292(b) in this Court.

Respectfully submitted,

By: /s/ *Lisa S. Blatt*
    LISA S. BLATT
      *Counsel of Record*
    JOSEPH M. TERRY
    AMY MASON SAHARIA
    NICHOLAS G. GAMSE
    ALEXANDRA M. GUTIERREZ
    CLAIRE R. CAHILL
    WILLIAMS & CONNOLLY LLP
      *680 Maine Avenue, S.W.*
      *Washington, DC 20024*
      *(202) 434-5000*
      *(202) 434-5029 (fax)*
      *lblatt@wc.com*

    RUSSEL B. PIERCE, JR.
    NORMAN, HANSON, &
    DETROY LLC
      *2 Canal Plaza, P.O. Box 4600*
      *Portland, ME 04112*
      *(207) 774-7000*
      *(202) 296-5660 (fax)*
      *rpierce@nhdlaw.com*

    ATTORNEYS FOR DEFENDANT-
    APPELLANT MONTEREY BAY
    AQUARIUM FOUNDATION

APRIL 7, 2025

# CERTIFICATE OF COMPLIANCE

1. This Reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this Reply contains 2,494 words, which does not exceed 2,600 words.

2. This Reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Expanded BT, size 14.

/s/ *Lisa S. Blatt*
LISA S. BLATT

DATED: APRIL 7, 2025

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on April 7, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Lisa S. Blatt*
LISA S. BLATT

DATED: APRIL 7, 2025